**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wade Wendelschafer, | CIV 12-1951-PHX-MHB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Wade Wendelschafer's appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

## I. PROCEDURAL HISTORY

In April 2007, Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning May 30, 2007, due to neck and back impairments. (Tr. at 238-48.) An ALJ denied Plaintiff's claims on October 8, 2009. (Tr. at 83-95.) Plaintiff subsequently requested review of the ALJ's October 2009 decision and filed new applications for disability insurance benefits and supplemental security income. (Tr. at 167-68, 256-70.) In March 2010, the Appeals Council granted Plaintiff's request for review, remanded the case to the ALJ for further proceedings, and instructed the ALJ to consolidate Plaintiff's claims. (Tr. at 96-98.) On January 28, 2011, the ALJ issued a decision denying Plaintiff's claims. (Tr. at 7-26.) The Appeals Council declined Plaintiff's

request for review (Tr. at 1-6), making the ALJ's January 2011 decision the final decision of the Commissioner.  Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error.  See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Reddick, 157 F.3d at 720.  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1)  determine whether the applicant is engaged in "substantial gainful activity";

(2)  determine whether the applicant has a medically severe impairment or combination of impairments;

1

2

    (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

3

4

    (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

5

6

    (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

7

8

9

10

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

    At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 30, 2007 – the alleged onset date. (Tr. at 12.) At step two, she found that Plaintiff had the following severe impairments: spasmodic torticollis, cervical herniated nucleus pulposus, cervical spine stenosis, nerve damage, cervical dystonia and lumbar radiculopathy. (Tr. at 12.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 12-13.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform light work ... except the claimant can never climb ladders, ropes or scaffolds and occasionally climb ramps and stairs; frequently balance, stoop, kneel, crouch and crawl; and should avoid concentrated exposure to hazards, including heavy machinery and heights."[1] (Tr. at 13-18.) The ALJ determined that Plaintiff was able to perform past relevant work as a construction superintendent and truck driver. (Tr. at 18-19.) Therefore, the ALJ concluded that Plaintiff has not been under a disability from May 30, 2007, through the date of her decision. (Tr. at 19.)

26

27

28

    [1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

**IV.  DISCUSSION**

In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly consider his subjective complaints; (2) failing to properly consider lay witness or third-party statements; and (3) failing to properly weigh medical source opinion evidence.  Plaintiff requests that the Court remand for determination of benefits.

**A.    Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred in rejecting his subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'  The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"  Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted).  "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Id. at 1037 (citations omitted).   General assertions that the claimant's testimony is not credible are insufficient.  See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495

F.3d 624, 637-39 (9th Cir. 2007).[2]  The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ."  Smolen, 80 F.3d at 1284 (citation omitted).

At the October 2010 administrative hearing, Plaintiff appeared with both a walker and a cane and testified that he had been using these assistive devices for the previous eight or nine months.  (Tr. at 61.)  He said that his wife had gotten him the walker because she thought it would be easier for him to get around outside the house.  Plaintiff reported he could walk for 15 minutes at a time with his walker.  (Tr. at 62.)  He estimated that he could sit for 15 to 30 minutes at a time and stand for around 10 to 20 minutes at a time.  (Tr. at 68.)  Plaintiff reported he could lift about the weight of a gallon of milk.  (Tr. at 69.)  He stated that he dozed between two and four hours per day, but less on the weekend when his grandchildren were at his house.  (Tr. at 63.)  Plaintiff testified he had constant chronic pain in his back and extremities.  (Tr. at 64-65.)  He said that his medications caused drowsiness.  (Tr. at 69.)  Plaintiff reported that he did dishes and some laundry and he drove short distances.  (Tr. at 69-70.)

Having reviewed the record along with the ALJ's credibility analysis, the Court finds that the ALJ made extensive credibility findings and identified several clear and convincing reasons supported by the record for discounting Plaintiff's statements regarding his pain and limitations.    Although  the  ALJ  recognized  that  Plaintiff's  medically  determinable impairments could reasonably be expected to cause the alleged symptoms, she also found that

---

[2]  With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.  See id.

1   Plaintiff's statements concerning the intensity, persistence, and limiting effects of the
2   symptoms were not fully credible.  (Tr. at 13-16.)

3         In her evaluation of Plaintiff's testimony and other subjective statements of record,
4   the ALJ first referenced evidence of Plaintiff's daily activities finding that "claimant has
5   described daily activities which are not limited to the extent one would expect given the
6   complaints of disabling symptoms and limitations."  (Tr. at 14.)  "[I]f the claimant engages
7   in numerous daily activities involving skills that could be transferred to the workplace, an
8   adjudicator may discredit the claimant's allegations upon making specific findings relating
9   to the claimant's daily activities."  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991)
10  (citing Fair, 885 F.2d at 603); see Berry v. Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010)
11  (claimant's activities suggested a greater functional capacity than alleged).

12        The ALJ found that although Plaintiff had limitations "due to the residuals" of a
13  January 7, 2006 motor vehicle accident, he testified to being able to drive a car, and stated
14  that he does both the dishes and laundry.  (Tr. at 14.)  The ALJ determined that these are not
15  the activities of an individual as "severely debilitated as the claimant has alleged."  (Tr. at
16  14.)  The ALJ further noted that the ability to drive indicates the ability to use foot controls
17  and hands at the same time, suggesting more function that Plaintiff has alleged.  (Tr. at 14.)
18  Moreover, citing to medical evidence from Jody Reiser, M.D., Plaintiff's treating provider,
19  the ALJ found that on January 1, 2009, Plaintiff reported that his pain was better with less
20  interference in all activities of daily living.  (Tr. at 14, 510-24.)  While not alone conclusive
21  on the issue of disability, an ALJ can reasonably consider a claimant's daily activities in
22  evaluating the credibility of his subjective complaints.  See, e.g., Stubbs-Danielson v. Astrue,
23  539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's credibility determination based in part
24  of the claimant's abilities to cook, clean, do laundry, and help her husband with the finances);
25  Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (upholding ALJ's credibility
26  determination based in part on the claimant's abilities to cook, clean, shop, and handle
27  finances).

28

1    Next, in her credibility analysis, the ALJ addressed the type, dosage, effectiveness,

2    and side effects of medication taken to alleviate pain.  (Tr. at 14.)  The ALJ found that

3    Plaintiff has been prescribed and has taken the appropriate medications for the alleged

4    impairments.  However, citing to medical records from 2007 to 2009, the ALJ noted that the

5    medications have been relatively effective in controlling Plaintiff's symptoms.  The ALJ

6    specifically cited to a February 11, 2009 report wherein Plaintiff noted "significant

7    satisfaction with the current medication regime[n]."  (Tr. at 14.)  Turning to the side effects,

8    the ALJ found that the medical records "do not corroborate [Plaintiff's] allegations."  (Tr.

9    at 14.)  Specifically, the ALJ stated that the treatment records of Dr. Reiser consistently

10   indicate that Plaintiff has no side effects from his medications, including Fentanyl, Endocet,

11   Valium, Percocet, Cymbalta, and Amitryiptyline.  (Tr. at 14, 419-25, 463-82, 510-24, 598-

12   622.)  The ALJ further recognized that the medical evidence indicated that Plaintiff has not

13   been entirely compliant in taking his prescribed medication – suggesting that his symptoms

14   may not be as limiting as alleged.  (Tr. at 14, 510-24, 419-25.)  And, similarly, the ALJ found

15   instances in the medical record wherein Plaintiff failed to follow-up on recommendations

16   made by his physician, which also suggests that his symptoms may not be as serious as

17   alleged.  (Tr. at 14-15, 463-82.)  The ALJ further documented that in February 2010, Plaintiff

18   was not willing to be referred to a pain management specialist.  Dr. Reiser advised him that

19   she had no further treatment options to offer him.  Later that year, Plaintiff declined to see

20   Dr. Reiser stating that there was nothing different to be found.  (Tr. at 15, 672-77, 598-622.)

21   Lastly, in analyzing Plaintiff's subjective complaints, the ALJ discussed the objective

22   medical evidence finding that "[a]lthough the claimant has received treatment for the

23   allegedly disabling impairments, that treatment has been essentially routine and/or

24   conservative in nature."  (Tr. at 15, 419-25, 463-82, 510-24, 545, 89, 598-622); see Johnson

25   v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (evidence of "conservative treatment" is

26   sufficient to discount a claimant's testimony regarding severity of an impairment); Bray v.

27   Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (upholding adverse

28   credibility finding where ALJ pointed out, in part, that claimant's statements at the hearing

1   did not comport with objective evidence in her medical record). Specifically, the ALJ

2   discussed Plaintiff's diagnostic studies and the findings of two neurosurgeons – both of

3   whom opined that Plaintiff's mild condition did not warrant invasive/surgical treat and

4   should be maintained with conservative treatment. (Tr. at 15, 463-82, 525-33.)

5          In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's

6   allegations not entirely credible. While perhaps the individual factors, viewed in isolation,

7   are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor

8   is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors

9   that led to the ALJ's decision. The Court concludes that the ALJ has supported his decision

10  to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore,

11  the Court finds no error.

12  **B.     Lay Witness/Third-Party Statements**

13         Plaintiff contends that the ALJ erred in failing to properly consider the statements of

14  his wife, who noted that his medical conditions cause pain, extremity numbness, memory

15  difficulty, and an inability to sustain an ordinary pace. Plaintiff asserts that the ALJ does not

16  recognize his wife's statements in the decision, which constitutes legal error.

17         In determining whether a claimant is disabled, an ALJ must consider lay witness

18  testimony regarding the claimant's inability to work. See Bruce v. Astrue, 557 F.3d 1113,

19  1115 (9th Cir. 2009) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir.

20  2006)). An ALJ cannot disregard lay witness testimony without comment, see Bruce, 557

21  F.3d at 1115 (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), but may do so

22  only upon providing specific reasons that are "germane to each witness." Id. (quoting

23  Nyugen, 100 F.3d at 1467); Stout, 454 F.3d at 1054. When an ALJ errs in failing "to

24  properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot

25  consider the error harmless unless it can confidently conclude that no reasonable ALJ, when

26  fully crediting the testimony, could have reached a different disability determination." Stout,

27  454 F.3d at 1056.

28

1    Here, the ALJ failed to properly discuss lay witness statements completed by
2    Plaintiff's wife.  This was legal error.  <u>See</u> <u>Bruce</u>, 557 F.3d at 1115 (lay testimony "is
3    competent evidence and 'cannot be disregarded without comment'") (citing <u>Nguyen</u>, 100
4    F.3d at 1467).  However, the Court concludes that no reasonable ALJ, even if fully crediting
5    her statements, could have reached a different disability determination.  The limitations and
6    symptoms contained in Plaintiff's wife's letter are entirely similar to and consistent with,
7    those which Plaintiff described in his own testimony.  As a result, because this Court
8    concludes that the ALJ's decision to discredit Plaintiff's testimony was supported by
9    substantial evidence, and because Plaintiff's wife's statements were consistent with
10   Plaintiff's testimony, it was reasonable for an ALJ to disregard Plaintiff's wife's statements
11   as well.  Therefore, the ALJ's error in disregarding Plaintiff's wife's statements was
12   harmless.

13   **C.    Medical Source Opinion Evidence**

14   Plaintiff contends that the ALJ erred by failing to properly weigh medical source
15   opinion evidence.  Specifically, Plaintiff argues that the ALJ improperly rejected the
16   assessments of Dr. Reiser and gave greater weight to the opinions of the examining and state
17   agency physician's opinions.

18   "The ALJ is responsible for resolving conflicts in the medical record." <u>Carmickle v.</u>
19   <u>Comm'r, Soc. Sec. Admin.</u>, 533 F.3d at 1164.  Such conflicts may arise between a treating
20   physician's medical opinion and other evidence in the claimant's record.  In weighing
21   medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three
22   types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining
23   physicians, who examine but do not treat the claimant; and (3) non-examining physicians,
24   who neither treat nor examine the claimant.  <u>See</u> <u>Lester</u>, 81 F.3d at 830.  The Ninth Circuit
25   has held that a treating physician's opinion is entitled to "substantial weight." <u>Bray v.</u>
26   <u>Comm'r, Soc. Sec. Admin.</u>, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting <u>Embrey v. Bowen</u>,
27   849 F.2d 418, 422 (9th Cir. 1988)).  A treating physician's opinion is given controlling weight
28   when it is "well-supported by medically accepted clinical and laboratory diagnostic

1   techniques and is not inconsistent with the other substantial evidence in [the claimant's] case

2   record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating physician's opinion

3   "is not well-supported" or "is inconsistent with other substantial evidence in the record," then

4   it should not be given controlling weight. Orn, 495 F.3d at 631.

5          If a treating physician's opinion is not contradicted by the opinion of another

6   physician, then the ALJ may discount the treating physician's opinion only for "clear and

7   convincing" reasons. See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830). If

8   a treating physician's opinion is contradicted by another physician's opinion, then the ALJ

9   may reject the treating physician's opinion if there are "specific and legitimate reasons that

10  are supported by substantial evidence in the record." Id. (quoting Lester, 81 F.3d at 830).

11  Since the opinion of Dr. Reiser was contradicted by examining and reviewing doctors'

12  opinions, as well as, other objective medical evidence, the specific and legitimate standard

13  applies.

14         Historically, the courts have recognized the following as specific, legitimate reasons

15  for disregarding a treating or examining physician's opinion: conflicting medical evidence;

16  the absence of regular medical treatment during the alleged period of disability; the lack of

17  medical support for doctors' reports based substantially on a claimant's subjective complaints

18  of pain; and medical opinions that are brief, conclusory, and inadequately supported by

19  medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten

20  v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair, 885

21  F.2d at 604. The Court finds that the ALJ properly gave specific and legitimate reasons,

22  based on substantial evidence in the record, for discounting Dr. Reiser's opinion.

23         Following a motor vehicle accident in January 2006, Plaintiff began treatment with

24  his neurologist and treating physician Dr. Reiser in 2007, and continued treatment with her

25  through 2010. During this time period, Dr. Reiser completed multiple assessments of ability

26  to do work-related physical activities. Specifically, in July 2007, Dr. Reiser opined that, in

27  an eight-hour work day, Plaintiff can lift and/or carry 10 to 20 pounds; sit two to three hours;

28  stand less than one hour; walk one to two hours; can never crawl or climb, occasionally bend,

stoop, balance, crouch, and kneel; and has mild restrictions around unprotected heights and moving machinery and moderate restrictions driving automotive equipment. (Tr. at 17, 498-501.) In June 2008, Dr. Reiser assessed Plaintiff with the capacity to lift and/or carry 10 to 20 pounds; sit one to two hours; stand and/or walk one to two hours; occasionally bend, crawl, climb, reach, stoop, balance, crouch, and kneel; and has moderate restrictions around unprotected heights and total restrictions from being around moving machinery and driving automotive equipment. (Tr. at 17, 535-40.) Dr. Reiser opined that Plaintiff is unable to sustain work eight hours per day, five days per week on a regular basis. (Tr. at 17, 535-40.) In December 2009, Dr. Reiser opined that Plaintiff has the capacity to lift and/or carry 10 to 15 pounds; sit less than two hours; stand and/or walk less than two hours; with the same postural and environmental limitations as the previous assessment. (Tr. at 17, 592-93.) And, in October 2010, Dr. Reiser assessed Plaintiff with the identical restrictions as the December 2009 assessment. (Tr. at 17, 681-82.) Dr. Reiser opined that Plaintiff is unable to sustain work eight hours per day, five days per week, on a regular basis. (Tr. at 17, 681-82.)

In June 2008, State agency physician Thomas Glodek, M.D., assessed Plaintiff's functional capacity and opined that in an eight-hour workday he has the capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours; sit about six hours; and perform unlimited pushing and/or pulling. (Tr. at 16, 454-61.) Dr. Glodek further opined that Plaintiff is limited to never climbing ladders, ropes, and scaffolds; occasionally climbing ramps and stairs; frequently balancing, stooping, kneeling, crouching, and crawling; and avoid concentrated exposure to hazards. (Tr. at 16, 454-61.)

In February 2010, examining physician Robert Palmer, M.D., opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six to eight hours; sit about six to eight hours; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally kneel, crouch, and crawl; and frequently stoop, reach, handle, finger, and feel. (Tr. at 16, 650-57.) He also stated Plaintiff was restricted from working around heights, moving machinery, and temperature extremes. (Tr. at 16, 650-57.)

1       In March 2010, Robert S. Hirsch, M.D., another state agency physician, reviewed the

2  record and assessed the same limitations of Plaintiff as Dr. Glodek – except that Dr. Hirsch

3  opined that Plaintiff could only occasionally crouch and crawl.  (Tr. at 17, 658-65.)

4       In his evaluation of the objective medical evidence, the ALJ first addressed Dr.

5  Glodek's medical assessment, noted above, and gave his opinion great weight.  (Tr. at 16.)

6  The ALJ found that Dr. Glodek's opinion was "consistent with the greater objective medical

7  evidence, including diagnostic studies, the claimant's activities of daily living, and the record

8  as a whole."  (Tr. at 16.)

9       Next, the ALJ discussed the findings set forth in Dr. Palmer's assessment.  (Tr. at 16.)

10  The ALJ gave Dr. Palmer's opinion "considerable weight" as is was consistent with the

11  doctor's examination of Plaintiff, and it was generally consistent with the medical evidence

12  of record and the opinion of Dr. Glodek.  (Tr. at 16.)

13       The ALJ then addressed the opinion of Dr. Hirsch finding that said opinion was

14  entitled to "considerable weight" since it was entirely consistent with the medical evidence

15  of record and the "controlling opinion of Dr. Glodek."  (Tr. at 17.)

16       Lastly, the ALJ spent the majority of her discussion of the objective medical evidence

17  examining Dr. Reiser's treatment records and multiple assessments of ability to do work-

18  related physical activities from 2007 through 2010.  (Tr. at 17-18.) In her analysis, the ALJ

19  stated, in pertinent part:

> Dr. Reiser's reports contain inconsistencies from form to form as to the extent of the claimant's limitations, and the doctor's opinions are accordingly rendered less persuasive.  Further, the doctor's own treatment records do not support the extreme restrictions set forth [in] any of [the] opinions, nor do the diagnostic studies [].  In addition, the doctor's own examination findings and the findings of the claimant's neurosurgeons that the degenerative changes of the claimant's spine were mild in nature and there was no significant foraminal or spinal stenosis, no focal neurological deficits, and no structural abnormalities (Exhibits 9F/9-10 and Exhibit 16F) do not support the limitations opined by Dr. Reiser.  Further, Dr. Reiser's treatment records note that the claimant had improvement from treatment. (Exhibit 15F/5, 10; Exhibit 25F/13).  Moreover, as to the constant chronic pain that Dr. Reiser opined renders the claimant unable to sustain work 8 hours a day, 5 days a week, Dr. Reiser's records note that the claimant reported that he was not taking prescribed pain medications because he felt [that he] could deal with the pain. (Exhibit 15F/12).  This is inconsistent with an individual in such severe pain that it keeps him from sustaining work activity.  In addition, Dr. Reiser's

- 12 -

opinion as to the claimant's functional limitations overall is inconsistent with Dr. Reiser's own prior opinion in her treatment notes wherein she found only that the claimant could not perform "heavy construction or operate heavy machinery." (Exhibit 3F/7). That prior opinion comports with the residual functional capacity described herein. Further, as to Dr. Reiser's opinion that the claimant is totally restricted from driving automotive equipment (Exhibit 36F/2), this is inconsistent with the claimant's own testimony that he is able to drive.

(Tr. at 17-18.)

The ALJ concluded stating that based on the above analysis, "the treating physician's opinion is less supportable than that of the State agency's examining and reviewing physicians (Exhibits 7F, 31F and 32F), which are consistent with the greater objective medical evidence of record, and the record as a whole." (Tr. at 18.)

The Court finds that the ALJ did not err in her assessment of Dr. Reiser's opinion. The ALJ discredited Dr. Reiser's opinion due to multiple inconsistencies contained in the doctor's assessments of ability to do work-related physical activities, inconsistencies with her own treatment record, inconsistencies with Plaintiff's own testimony, and inconsistencies with the majority of medical opinions and the medical evidence as a whole. See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding the incongruity between doctor's questionnaire responses and her medical records provides a specific and legitimate reason for rejecting the opinion); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) ("We hold that the ALJ properly found that [the physician's] extensive conclusions regarding [the claimant's] limitations are not supported by his own treatment notes. Nowhere do his notes indicate reasons why [the physician would limit the claimant to a particular level of exertion]."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ properly rejected a physician's testimony because "it was unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions"); Coley v. Astrue, 2010 WL 3220300, at * 14, 20 (D.Or. Aug.12, 2010) (holding that the claimant's daily activities were inconsistent with the treating physician's marked limitations) (citing Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.

1   2001).  Accordingly, the ALJ provided several specific and legitimate reasons, based on
2   substantial evidence in the record, for discounting Dr. Reiser's opinion.

3                                          **V. CONCLUSION**

4           Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for
5   disability insurance benefits and supplemental security income in this case.  The ALJ
6   properly discredited Plaintiff's credibility providing clear and convincing reasons supported
7   by substantial evidence; the ALJ's error in disregarding Plaintiff's wife's statements was
8   harmless; and the ALJ properly discounted the opinion of Dr. Reiser, providing specific and
9   legitimate reasons, based on substantial evidence in the record.  Consequently, the ALJ's
10  decision is affirmed.

11          Based upon the foregoing discussion,

12          **IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social
13  Security be affirmed;

14          **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment
15  accordingly.  The judgment will serve as the mandate of this Court.

16          DATED this 28th day of February, 2014.

17

18                                          _____

19                                          Michelle H. Burns
                                            United States Magistrate Judge
20

21

22

23

24

25

26

27

28